SAMUEL SMYTH, PLAINTIFF IN ERROR, *v.* DANIEL P. STRADER, JAMES. PERRINE, AND JOHN H. WOODCOCK, LATE PARTNERS, UNDER THE FIRM OF STRADER, PERRINE, & CO.

The statutes of Alabama require the negotiability and character of bills of exchange, foreign and inland, and promissory notes, payable in bank, to be governed by the general commercial law.

If a partner draws notes in the name of the firm, payable to himself, and then indorses them to a third party for a personal and not a partnership consideration, the first indorsee cannot maintain an action upon them against the firm, if he knew that the notes were antedated.

But if the first indorsee passes them away to a second indorsee before the maturity of the notes, in the due course of business, and the second indorsee has no knowledge of the circumstances of their execution and first indorsement, he may be entitled to recover against the firm, although the partner who drew the notes committed a fraud by antedating them.

But if the second indorsee received the notes after their maturity, or out of the .

Smyth *v*. Strader et al.

ordinary course of business, or under circumstances which authorize an inference that he had knowledge of the fraud in their execution or first indorsement, he cannot recover.

These things are matters of evidence for the jury.

Evidence is admissible to show that, in an account current between the first and second indorsee, no credit was given in it for the notes when they were passed from the first to the second indorsee.

So, evidence of drawing and redrawing between the first and second indorsee, alluded to in the account current, is admissible.

The testimony of one of the partners, offered for the purpose of proving the fraud committed by the drawer of the notes, is not admissible. This court again recognizes the rule upon this subject established in the case of Henderson *v*. Anderson, 3 Howard, 73.

The partner offered as a witness was a party upon the record, and thus, also, disqualified.

THIS case came up, by writ of error, from the Circuit Court of the United States for the Southern District of Alabama.

The facts in the case are stated in the commencement of the opinion of the Court, which the reader is requested to turn to and peruse, before reading the argument of counsel.

The case was argued by *Mr. Parke*, for the plaintiff in error, and *Mr. Sherman*, and *Mr. Willis Hall*, for the defendants in error.

*Mr. Parke*, for the plaintiff.

The admission of Strader as a witness was an error. A portion of the funds of the firm belonged to him, and he was liable to a contribution if they fell short. 1 Esp. N. P. Rep. 103 ; Ryan & Moody, 31 ; 21 Com. Law Rep. 334 ; 2 Peters, 186. He could not even be made a good witness by a release. 1 Wharton, 392, 398 ; 2 Penn. Rep. 138 ; 2 Watts, 347, 351. He was not only interested, but a party to the suit on the record.

There is also an error in the opinion of the court below, that whatever would be a good defence to a suit brought by the first indorser was also to one brought by the second indorser ; that all equities passed with a note as if it were a bond. But previous errors do not affect an innocent holder, where the note is taken in the ordinary course of commercial business. The free circulation and transmission of promissory notes is indispensable to commercial operations. If any loss should happen it ought to fall upon the party who is negligent. Collyer on Partnership, 241, 242. A declaration of partnership implies confidence in the mutual integrity of the parties. 3 Kent's Comm. 46.

Partners are bound, as respects third persons, even by the fraudulent acts of a copartner. Story on Part. § 108, 160 ; Collyer on Part. 241 – 243.

In this case the evidence shows that the notes in question were transferred to Smyth for goods sold by him.

But the court say, that if Stinson & Campbell knew the circumstances attending the making and first indorsement of the note,

the plaintiff, who is an innocent indorsee, shall not recover. We do not deny that these circumstances would constitute a valid defence, if the drawers were sued by Stinson & Campbell ; but that is not the case. If the fraud were proved, it would not defeat our right to recover ; but the only proof of fraud is in Strader's evidence, and he ought to be rejected as an incompetent witness. The court below must have founded its instructions upon his evidence. Gould says, in his testimony, that notice of the dissolution of the partnership was not published until the 23d of April, 1836, which was after the date of the notes in question. Smyth was not bound to discredit paper which bore date anterior to a public notice of the dissolution of the partnership.

*Mr. Sherman* and *Mr. Willis Hall,* for defendants in error. (The arguments of these two gentlemen are consolidated.)

The principle of this case has been stated by the plaintiff's counsel to be the highly equitable one, that, " of two innocent persons, the one whose laches occasioned the loss must bear it." But here the equity is all the other way ; here there is no loss. Nobody has given credit to false paper. It is a bold attempt to make our client, Perrine, pay the plaintiff a debt of $ 20,000, due him by Stinson & Campbell, men with whom our client never had the remotest connection. The evidence in the case warrants me in saying it is a gross fraud, from beginning to end, and all that is required to make it a successful one, is a decision of this court favorable to the plaintiff.

This high court will struggle hard, before it will be made a link in this iniquitous chain, — before it will be used as an instrument to effect one of the most palpable frauds ever exposed to the light.

The suit, though nominally against Strader, Perrine, & Co., is really against Perrine alone. It is true he was a member of this unfortunate concern for " one little month," — from the 1st of November to the 5th of December, 1835, — months before the notes on which this suit is brought are pretended to have been made. These notes are ostensibly dated in March, 1836, although really made by Stevenson, one of the partners, after the partnership was finally dissolved, and so advertised in the Mobile papers of the 23d of April, 1836. This quondam partner had then no more authority to sign the partnership name than any other person ; but he antedated them to a time when the partnership was in existence, and he was authorized to sign the partnership name. This presents a case " on all fours," as the lawyers say with the case of Wright *v.* Pulham, 2 Chit. Rep. 121, where, in a precisely similar case, the court hold unanimously that the partnership is not bound by the note.

In the printed case, the plaintiff's only witness states that the notes sued upon were received on account of a debt which accrued

in 1831, five or six years before the notes purport to be made. Other evidence shows clearly that they were received not in payment and extinguishment of the preceding debt, but for collection, the proceeds to be credited when received. This brings it within the case of De la Chaumette *v.* The Bank of England, 9 Barn. & Cressw. 208, where, under similar circumstances, the property of a note was held in fact to be in the assignor, and to be affected, in the hands of the assignee, with all the equities which existed against the assignor. On the strength of this admission by the plaintiff, we had prepared to submit an argument to the court almost exclusively on this point; not by any means because this was the only ground on which a conclusive defence could be made, but because the other grounds were too obvious to require comment.

But it now appears, on examining the original record, that 1831 is a misprint for 1836. The plaintiff has made no admission that the notes were received for a preexisting debt, and though the evidence on that point is abundant, yet, the fact not being admitted by the plaintiff, it should have been submitted to a jury, and passed that ordeal, before it can properly be urged upon the consideration of this court. We are compelled, therefore, at this late moment, to abandon our brief, and employ the few moments allowed us, at the close of the session, in commenting on the two points made by the plaintiff's counsel ; — 1st, the admissibility of Strader's testimony ; 2d, the charge of the judge.

First. Strader is worth nothing, and resides in the State of Ohio. Under these circumstances, the great anxiety manifested by plaintiff, as admitted by his counsel, and disclosed by the numerous writs on the record, to make him a party to the suit, could have been stimulated by no motive but to deprive the defendant of the benefit of his testimony. Not having succeeded in that object, he now contends that his testimony was inadmissible.

1st. On the ground that he was one of the makers, and no man can be admitted to impeach his own name. To which it is replied, that he was in no sense a maker. The paper was, in fact, forged by one of the partners, after the partnership was dissolved. Again, it is replied, that Strader is not introduced for the purpose of discrediting the paper against the actual members of the firm at the date of the notes, but to show that Perrine had previously retired, and was in no respect liable.

2d. A second ground of objection to Strader's testimony is, that he was a *partner* in the firm of Strader, Perrine, & Co., and that " one partner cannot be admitted as a witness for or against his firm."

That is certainly the general rule ; but one of the exceptions is where, as in this case, it is proved by other witnesses, that the transaction is by one of the partners, without the knowledge of the partnership, on his individual account, and the copartners are

not liable, as among themselves, to contribution, then they may be witnesses for the firm.    Story on Part. 386 ; Phil. Ev. (3d ed.) 55 ; Ridley v. Taylor, 13 East, 175 ; Le Roy et al. v. Johnson, 2 Peters, 198.

Besides, Strader was not a copartner of Perrine (the sole defendant) at any time during any part of this transaction. The rule is, that instantly, on the dissolution of a firm, the copartners become witnesses, the one for the other, like other persons. Gow on Part, 202.

Although, after the withdrawal of Perrine, the name continued the same, yet, by that act, the partnership was dissolved, and subsubsequently a new partnership, under the same name, was formed. Strader, Perrine, & Co. represented very different firms in November, 1835, and in March, 1836.

But the great question which decides the competency of witnesses in our days is, " Has he an interest in the event ? "  To ascertain this, the test universally applied is, " Can the judgment be used in any other case for or against the witness ? "  Willings et al. v. Consequa, Peters's C. C. Rep. 322 ; Chitty on Bills, 669 ; Gow on Part. 80.

Suppose Smyth fails in this suit. It is no bar to another suit against Strader, nor can it be given in evidence by either party in any possible way. On the other hand, suppose Smyth gains this suit, Perrine has to pay the money. There is no principle which will enable Perrine to recover of Strader, or of any member of the firm of Strader, Perrine, & Co. He cannot make them contribute for they are not his partners ; nor is there any privity between them. It is as if his house were burnt down ; it is his misfortune, and he cannot divide it with his neighbours. He cannot make them pay the whole, for the recovery is had against him, if at all, on account of his laches, in not publishing his withdrawal to the world, — a matter with which his quondam partners have nothing whatever to do. But granting that Perrine, if compelled to pay the note, can recover of the firm, it can only be on the ground of its being a genuine note, which they would have been bound to pay to Smyth. They cannot, by an ex parte proceeding, be placed in a worse condition than they were. The constitution guaranties them a hearing, and the real parties would be deprived of this right in this case, not having been parties to the original suit brought by Smyth, if not allowed to make the same defences against the note in the hands of Perrine, as they could have made in the hands of Smyth. These elementary principles forbid the judgment obtained against Perrine from being used by him against the firm, or any member of it.

We conclude, therefore, that the judgment in this case, whichever party may succeed, cannot be used by plaintiff or defendant against the witness Strader.

To illustrate this point still further. It is believed to be settled

law, in this country, that one against whom a forgery is perpetrated is a competent witness to prove it, in any suit in which he is not interested in the event. Commonwealth v. Snell, 3 Mass. R. 82 ; The People v. Howell, 4 Johns. R. 296, 302 ; Pope & Hickman v. Nance & Co., 1 Alab. (old series) 299.

The facts proved on trial make a case of forgery. It is precisely analagous to the case supposed by Lord Coke, in 3 Inst. 169. "It is forgery to make a deed of feoffment to A, and then make another of prior date to B, which, at the time, he had no power to make."

We cordially unite with the learned counsel for the plaintiff in soliciting the court to give full instructions to the inferior tribunal, with respect to the admissibility of Strader's testimony, in the possible event of a new trial. We do not anticipate such a decision, nor comprehend upon what principles of law it can be made. But it is prudent in all cases to be prepared for the worst. In that spirit it is, that we ask the court, should they be induced by any technical view of the case to send it back for a new trial, to give minute directions as to the availability of notes received merely as contingent payment of a precedent debt.

The evidence in this case shows the notes were not transferred to the plaintiff in payment and extinguishment of any thing, and that no credit, no new consideration was given for them, but that they were in fact deposited with the plaintiff for collection, the amount to become payment on the double contingency, 1. that the notes should be collected by the plaintiff; 2. that in the mean time the original debt should not be paid. But this evidence not having been distinctly admitted by the plaintiff, or submitted to the jury, cannot be brought to the attention of this court, except in reference to the possibility of a new trial.

In all cases where notes are given in payment, but not extinguishment of a preceding debt, that is, where they are to become payment only in case of collection, the assignee is the mere agent of the assignor, and they continue his property, and at his risk, and subject to all equities against him, as much as if in his actual possession.

I am aware of the decisions in Riley & Van Amringe v. Anderson, 2 McLean, 589, and Swift v. Tyson, 16 Peters, 1. Both these decisions are in strict conformity with the principle. In the first case it was distinctly left to the jury to say whether the notes were received in payment or not ; they returned that they were, and the court held, that though it was an old debt, yet the assignee, having received them in payment, held them for value. The same doctrine is held in Swift v. Tyson, which was an undisputed case of absolute payment of an old debt. All that is decided by those two cases is, that it is immaterial whether the note is given at the inception of a transaction, or subsequently, if it is given in

absolute payment. In that case, the assignee holds it for value. It is true that there are some *dicta* thrown out in the case of Swift *v.* Tyson, which require explanation and perhaps limitation ; for example, at page 20, it is said, — " We are prepared to say that receiving a note in payment of, or as security for, a preëxisting debt is according to the known usual course of trade and business." This certainly cannot be intended to mean that if the note is received, not in payment, not in pursuance of an original arrangement, and not for any new consideration, it can be held against the true owner. The court certainly do not intend to overrule the doctrine of Chief Justice Marshall in the case of Coolidge *v.* Payson, 2 Wheat. 66, which is quoted and relied upon in the *per curiam* opinion in this very case of Swift *v.* Tyson. That memorable judge says, that although a note may be taken for a preëxisting debt, yet " in all such cases the person who receives such a bill in payment of a debt will be prevented thereby from taking other means to obtain the money due him." That is, the payment must be an extinguishment of so much of the preëxisting debt. So in the case of Brush *v.* Scribner, 11 Conn. R. 388, another case on which this court relies for their doctrine in Swift *v.* Tyson. Extinguishment as well as payment is considered essential to give validity to the transfer of a note assigned for a preëxisting debt. The *dictum* therefore, in Swift *v.* Tyson is not to be understood as conflicting with the doctrine of these two cases.

The cases in 13 Wend. 505, 12 Wend. 593, 10 Wend. 85, and other cases in the New York courts, are considered by this court, in Swift *v.* Tyson, as maintaining the doctrine, that notes transferred in payment of preëxisting debts were not valid in the hands of the holder. This, I apprehend, is not the doctrine they support. They must be taken in connection with the doctrine preëstablished in the Court of Errors, Murray *v.* Gouverneur et al., 2 Johns. Cases, 441 ; " that a bill shall not be a discharge of a precedent debt, unless so expressly agreed between the parties." Taken in this connection, the doctrine they decide is, that payment without extinguishment is not available to the holder against the equitable owner, which is precisely the doctrine of Marshall, in Coolidge *v.* Payson. The dispute is nothing but a revival of the old question. What is payment ? that is, what is payment and extinguishment ? and what is merely contingent payment ? And the New York courts have taken Lord Holt's side of the question. In the case of Ward *v.* Evans, 2 Ld. Raym. 930, that eminent judge remarked, — " Taking a note is sometimes payment when a part of the original transaction, but paper is no payment when a precedent debt. I am of opinion and always was (notwithstanding the noise and cry that it is the use of Lombard Street, as if the contrary opinion would blow up Lombard Street), that the acceptance of such a note is not actual payment ; for when such a note is given in payment it is al-

ways intended to be taken on this condition, to be payment if the money be paid thereon in convenient time."

The *dictum* under consideration not only says receiving a note in payment, but " as security for a preëxisting debt, is according to the known usual course of trade and business." The court here must mean to restrict the receiving it as security to the cases, 1. where it is a part of the original agreement ; 2. where some new consideration is given.

The peculiar province of this species of paper is, to facilitate the exchanges of value from place to place, and from person to person ; to be deposited as collateral, though a possible, is not an appro-. priate or natural function of bills of exchange, any more than it is of money. Bay *v.* Coddington, 5 Johns. Ch. 54 ; Collins *v.* Martin, 1 Bos. & Pul. 648 ; Coggs *v.* Bernard, 2 Ld. Raym. 917 ; Harrisburg Bank *v.* Meyer, 6 Serg. & Rawle, 537 ; Evans *v.* Smith, 4 Binn. 366.

Whether money or bills of exchange are deposited as collateral security, the transaction is not governed by the laws which govern the payment of money, or the negotiation of bills, but by the ordinary laws which govern pledges or pawns. Story on Bailments, p. 198, § 290. Assigns of Horseman *v.* Eden, 1 Bos. & Pul. 398.

· Three principles of that law apply : —

1. The depositer or pledger can pledge no more or greater interest than he has in the property pledged. Code Lib. 8, tit. 16, l. 6 ; Hoare *v.* Parker, 2 T. R. 376 ; 1 Dane's Abr., ch. 17, art. 4, § 7 ; Story on Bailments, p. 214, § 22 ; ibid. p. 215, § 324. [Bills of exchange are said to be an exception to this rule. The exception is believed to relate to the power, not the right, of transferring the property.]

2. The absolute legal title is not changed, the pledger receiving nothing but a special property, amounting to a lien for his advance, together with a right of possession. Story on Bailments, p. 197, § 287.

An advance *bonâ fide* made upon property improperly pledged may be required to be returned. Cortelyou *v.* Lansing, 2 Caines's Cas. Err. 200 ; South Sea Co. *v.* Duncomb, 2 Stra. 919 ; 2 Kent's Comm. 450 ; 1 Dane's Abr., ch. 17, art. 4, § 9. But if no consideration be advanced, none can be required.

3. The contract of pledge is a distinct and substantive contract, and requires a legal motive or consideration to support it, as much as any other.

The conclusion is that the court, by the word payment in the *dictum*, in Swift *v.* Tyson, before referred to, mean payment and extinguishment, not contingent payment ; and the expression " may be received as security," must be qualified by adding, but it cannot be held against the equitable owner unless it was part of the original contract or induced by some new consideration.

But it is believed the court will not be called upon to investigate this subject. There are other sufficient grounds for affirming the judgment. We hasten therefore to reply to the objections to the charge of the court below.

The charge is, in substance, " that if Stevenson (one of the partners) made and assigned the notes on his own account, without the consent of his partners, and Stinson & Campbell (the assignors of the plaintiff) knew it, and if Perrine retired from the firm before the notes bear date, and Stinson & Campbell knew it when they took the notes, that the jury must then find for the defendant Perrine."

This charge is justified by three considerations.

1st. By the statute of Alabama, which authorizes the defendant to file a sworn plea denying the execution. Toul. Dig., ch. 10, § 3, p. 462. This is construed to operate as notice to the plaintiff, and throw the burden of proof upon him. Rolston *v.* Click et al., 1 Stew. 526. The plaintiff has gone to trial without any replication, which is construed a direct denial of all the material facts stated in the plea. Lucas *v.* Hitchcock, 2 Alabama R. 287. What, then, were the facts put in issue by the plea and denial ? (1.) That Perrine withdrew from the firm in December, 1835, and Stinson & Campbell knew it. (2.) That the note was not made at the time of its date. (3.) That it did not come into the hands of Stinson & Campbell till after the 17th May, 1836. (4.) That he did not make the note.

It was certainly incumbent on him to prove all the affirmative facts which he asserted by joining issue. For instance, he asserts that the notes were in the possession of Stinson & Campbell before the 17th of May. This is an essential fact ; for if Stevenson delivered them after publication that the partnership was dissolved, made on the 23d of April, 1836, the notes never received any vitality from the firm. One of the partners had no more power to bind them after dissolution than one who had never been a partner. Bell *v.* Morrison, 1 Peters, 371 ; Tombeckbee Bank *v.* Dumell, 5 Mason, 56. He makes no attempt to prove his assertion. He does not make out his case. Of course the court would have been justified in nonsuiting him in the first place, or in subsequently telling the jury to find for defendant.

2d. The state of the pleadings warranted the charge. A plea denying the making is authorized by statute, but its form is not prescribed. He chooses to join issue instead of replying over. He thereby binds himself down to the single point that Perrine made the notes. To prove which, he must show either that he signed them himself, or that he authorized some one else to do it. But, so far from proving this, the proof is, they were made by Stevenson, without authority, long after Perrine had withdrawn from the firm. If he had intended to hold Perrine by reason of his laches in not

Smyth *v.* Strader et al.

advertising his withdrawal, he should have replied that specially to Perrine's sworn plea of *non est factum.*

3d. The charge is justified by the statute of Alabama, which enables the defendant to set up the same defences against the assignee of a note as he could have made against the assignor, if the note had not been assigned. Toul. Dig., ch. 2, p. 69. This extends to all legal defences. Rolston *v.* Click et al., 1 Stewart, 526. And the law has been construed to apply to notes negotiable and payable in bank, if not held by the bank. M'Murran *v.* Soria et al., 4 How. Miss. Rep. 154.

A similar law prevails in most of the new and less commercial States and has been found to work well in practice. The business world has undergone a wonderful change within the last century. Bonds, bills single, and many other common law instruments have disappeared; their occurrence is almost as rare as that of the mammoth, or of the mastodons of old. All kinds of business are now transacted by notes of hand. The farmer gives his note to the merchant, the laborer to the farmer, the client to the lawyer; but the technicalities of commercial paper have not been so extensively introduced; and if the rigorous rules of the counting-house are to be applied to the notes of the farmer and of the rough-hewer of the wilderness, the most wide-spread injustice will be the consequence.

*Mr. Parke,* in reply, said that the argument drawn from the construction of the statute of Alabama was not in the brief of the opposing counsel, and had been suddenly sprung upon the court. The volume containing the entire law was not in court, and was procured very recently. But it did not cover the ground contended for by the other side, which was that an indorsee was placed precisely upon the same footing with a payee. The law of 1812, it is true, allows payments and set-offs to be pleaded if they existed before an assignment was made. But subsequent laws vary this.

It appears to be admitted by the argument upon the other side, that the case depends on Strader's evidence. But is he a good witness? It is said that we made great efforts to have process served upon him for the purpose of disqualifying him. But it was our interest to make him a defendant. He has never become a bankrupt, and ought to bear his share in paying the debts of the partnership. If he had withdrawn in fact from active participation in its affairs, others continued to carry on the same business under the same name until the 23d of April, 1836.

Mr. Justice McLEAN delivered the opinion of the court.

The plaintiff brought his action as the second indorsee of two promissory notes in favor of E. Stevenson, purporting to be signed by Strader, Perrine, & Co., which partnership consisted of Dan-

iel P. Strader, James Perrine, E. Stevenson, and John H. Wood-
cock. The notes were assigned by Stevenson to Stinson &
Campbell, of New Orleans, and by them to the plaintiff. Steven-
son died before the commencement of the suit, and the process
was served only on Perrine and Woodcock. At the fall term of
1842, Woodcock pleaded a discharge under the bankrupt law, and
Perrine pleaded that the partnership of Strader, Perrine, & Co.
commenced in November, 1835, and that in December of the
same year he withdrew from it. That at the time of leaving the
firm he sold, for one thousand dollars, his interest to Stevenson,
who, by Stinson & Campbell, through one Primrose, paid him
the above sum ; and that they knew of his withdrawal. That
the notes were antedated, and were not in possession of Stin-
son & Campbell, or assigned to them, till after the 17th of May,
1836.

Issues being joined on these pleas, the case was submitted to a
jury, who found in favor of Perrine, and that Woodcock had been
discharged under the bankrupt law.

The questions for decision arise on a bill of exceptions, taken
by the plaintiff.

The plaintiff proved, by the deposition of Hood, that Stevenson
was a member of the firm of Strader, Perrine, & Co., and that
he executed the notes, and that they are dated before any public
notice was given of the dissolution of the firm. That the firm of
Stinson & Campbell were indebted to the plaintiff, in a large sum,
in the summer of 1831 ; and that in part payment, the notes, be-
fore maturity, were assigned to him, for which a credit on their ac-
count was entered. And here the plaintiff's evidence closed.

The defendant, Perrine, proved, " that he withdrew from the
firm the 6th of December, 1835, but that there was no public ad-
vertisement, giving notice of the dissolution of the firm, until the
23d of April, 1836, although the fact was known to Stinson &
Campbell at the time of Perrine's withdrawal."

The defendant also proved, by John Test, that in August, 1836,
he saw in the hands of the plaintiff's agent an account current be-
tween him and the firm of Stinson & Campbell ; that he made a
copy of the same, which he produced, and from which it appeared
that no credit had been entered for the notes sued on.

The plaintiff's counsel moved the court to exclude from the jury
all testimony as to the transactions between Stevenson and the
firm of Stinson & Campbell, or between Stevenson and the other
members of the firm of Strader, Perrine, & Co., there being no
proof of any notice to the plaintiff of any of these matters insisted
on by the defendant in his defence. But the court overruled the
motion, and " instructed the jury, that if they believed the said
notes were made by Stevenson, without the knowledge and consent
of his partners, and that he passed them off to the said Stinson &

Campbell without the knowledge or consent of his partners, and that if the said Stinson & Campbell, at the time of their receiving the notes, knew that, prior to that time, to wit, on the 6th of December, 1835, Perrine had withdrawn from said firm, and was not then a partner, and that if it was also proved to them that the said notes were passed to the said Stinson & Campbell by Stevenson for his individual benefit, and not for the interest and benefit of the said firm, and that this was known to the said Stinson & Campbell when they received the said notes, that then the jury must find for Perrine, the defendant." To the above ruling and instruction, exceptions were taken by the plaintiff.

From the instruction of the court, it appears the notes in controversy were considered as governed by the law merchant. By the Alabama statute of 1812 (Clay's Dig. 381), the assignee of " bonds, obligations, bills single, promissory notes, and all other writings for the payment of money," may sue in his own name ; but all equities and grounds of defence remain open as fully as though the instrument had not been assigned, until the defendant had notice of the assignment. But by the act of 1828 (Clay's Dig. 383), it is provided, " that the same remedy on bills of exchange, foreign and inland, and on promissory notes payable in bank, shall be governed by the law merchant, as to days of grace, protest, and notice " ; and, by the succeeding section, all other contracts for the payment of money, &c., are made " assignable as heretofore, and the assignee may maintain such suit thereon as the obligee or payee could have done, whether it be debt, covenant, or assumpsit."

The phraseology of this section would seem to place all other instruments, for the payment of money, &c., on a different footing from those described in the preceding section. The provision of that section appears only to relate to the remedy on bills of exchange and promissory notes payable at bank under the law merchant, as regards the days of " grace, protest, and notice." But as the following section defines the rights of the assignee of " all other contracts in writing for the payment of money," &c., it may perhaps, be fairly inferred that the legislature intended the negotiability and character of the instruments above named should be regulated by the general commercial law. Such seems to be the opinion of the Supreme Court of Alabama. In the case of McDonald *v.* Husted, 3 Alabama Rep. 297, it was held, " that a note made negotiable and payable at bank is not subject to offset, in the hands of a *bonâ fide* indorsee, who has acquired it previous to maturity, although it has never been negotiated at the bank where it is made payable." Also in Beal *v.* Bennett, 6 Alabama Rep. 156, the same principle is recognized.

However fairly Stevenson may have acted in the execution of these notes payable to himself, it is clear that he could not have

sustained on them an action at law. A partner of a firm cannot, at law, sue it, for that would be to sue himself. But a *bonâ fide* assignee of Stevenson might maintain an action. Jones et al., Assignees, *v.* Yates, 9 Barn. & Cressw. 532 ; Bosanquet et al. *v.* Wray, 6 Taunt. 597 ; Aubert *v.* Maze, 2 Bos. & Pul. 371 ; Smith *v.* Lusher, 5 Cowen, 688. Stevenson, in executing the notes to himself, under the circumstances proved, committed a fraud against his partners ; and this fraud was greatly aggravated, if, as alleged, he antedated the notes so as to charge Perrine as partner. That he assigned the notes to Stinson & Campbell, if for any consideration, for one that was personal to himself, and wholly disconnected with the partnership, is not controverted. These facts, or a part of them, of which Stinson & Campbell must have had knowledge, would have defeated a recovery by them. Every "contract in the name of the firm, in order to bind the partnership, must not only be within the scope of the business of the partnership, but it must be made with a party who has no knowledge or notice that the partner is acting in violation of his obligations and duties to the firm, or for purposes disapproved of by the firm, or in fraud of the firm." Story on Partnership, 193. This rule as well applies to the indorsement of negotiable instruments as to other contracts.

But the fraud of Stevenson, and the knowledge of that fraud by Stinson & Campbell, do not necessarily defeat the plaintiff's action. And the charge of the court on this point was clearly erroneous. If, before the maturity of the notes, in the due course of business, and without any knowledge of the circumstances of their execution and first indorsement, the plaintiff received them, he may be entitled to recover, notwithstanding the fraud. By "forming a partnership, the partners declare themselves to the world satisfied with the good faith and integrity of each other, and impliedly undertake to be responsible for what they will respectively do within the scope of the partnership concerns." Story on Partnership, 161. On this principle, the firm is bound for the frauds committed by one of its partners. Where one of two innocent persons must suffer by the act of a third person, the rule is just, that he shall suffer who reposed the higher confidence and credit in such person.

But if the plaintiff received these notes after their maturity, he holds them subject to all the defences which might have been set up against them in the hands of Stinson & Campbell. Or if he received them out of the ordinary course of business, without consideration, or under circumstances which authorize an inference that he had knowledge of the fraud in their execution or their first indorsement, he cannot recover. These are matters of evidence for the jury.

The testimony of John Test, which was excepted to, we think

was rightfully admitted. He proved, that, in August, 1836, he saw in the hands of an agent of the plaintiff an account current between him and the firm of Stinson & Campbell. That he copied the account, which copy he exhibited, and from which it did not appear that a credit had been entered for the notes in controversy. As this, compared with the evidence of the plaintiff, might conduce to disprove the consideration alleged to have been paid for the notes by the plaintiff, it was properly admitted. The relevancy of the deposition of Charles, which was also excepted to, is not very apparent. It shows that Stinson & Campbell, in 1836, drew a large amount of drafts on the plaintiff, in part payment of drafts which he had previously drawn on them. This drawing and redrawing constituted no part of the account current spoken of by Test, but at the foot of the account a memorandum was made of these drafts. As this deposition conduced to show the nature of the accounts between the plaintiff and the firm of Stinson & Campbell, no very strong objection is perceived to its admission as evidence. It could not have misled the jury.

The deposition of Strader, which was also excepted to by the plaintiff, was not admissible under the decisions of this court. He was one of the firm of Strader, Perrine, & Co., and his testimony conduced to show the fraud of Stevenson in the execution of the notes. In the case of the Bank of the United States *v.* Dunn, 6 Peters, 57, this court said, — " It is a well settled principle, that no one, who is a party to a negotiable note, shall be permitted, by his own testimony, to invalidate it." The same principle was held in Bank of Metropolis *v.* Jones, 8 Peters, 12. This was decided in the case of Walton et al., Assignees of Sutton, *v.* Shelley, 1 Term R. 296 ; and although that decision was overruled by the King's Bench in the case of Jordaine *v.* Lashbrooke, 7 Term R. 601, this court, in the cases cited, and in several subsequent cases, have established the rule as above stated. In the State courts, there is a great diversity of judgment on this point.

Strader was a party on the record, and that rendered him an incompetent witness. Scott *v.* Lloyd, 12 Peters, 149 ; Stein *v.* Bowman et al., 13 Peters, 219.

Upon the whole, the judgment of the Circuit Court is reversed, and a *venire de novo* awarded.

## Mr. Justice CATRON.

In this case, my opinion is founded on considerations that differ so much from those proceeded on in the principal opinion, that I am under the necessity of stating my own views, or of dissenting, which I am not prepared to do.

In the first place, Stevenson had been one of the firm of Strader, Perrine, & Co. He made the note payable to himself, and signed the name of the firm to it. Being both a maker and th payee, the

note was void on its face, or at least could have no legal effect; when negotiated, that is, when it was indorsed by Stevenson, and sold to Stinson & Campbell, it could only become a binding instrument in their hands on Strader, Perrine, & Co., as Stinson & Campbell could enforce payment. The time of negotiation, therefore, is the true date of the note.

It is in proof, that the firm of Strader, Perrine, & Co. was dissolved on the 23d of April, 1836, and that the usual advertisement was then made of the fact. This bound all persons who had not had previous dealings with the firm; nor is there any proof found in the record, showing that either Stinson & Campbell, or Smyth, the plaintiff, had had any such dealings. If the note was negotiated, therefore, to Stinson & Campbell, after the dissolution of the partnership, it was void, and does not bind Perrine, inasmuch as Stevenson had no power to bind him.

2. Perrine is proved to have withdrawn from the firm in December, 1835. But as no regular notice was given of this fact, it rests on him to bring home knowledge of it to the holder of the paper. If Stinson & Campbell had knowledge, when they took the note from Stevenson, then they could not have recovered from Perrine on it.

So again, if Stinson & Campbell took the note from Stevenson in discharge of the individual debt of the latter, they could not recover from Perrine, whether he was or was not a partner at the date of its negotiation. The proof of either of these events is imposed on the plaintiff. But having shown either of the two last circumstances, then the plaintiff is bound to prove "under what circumstances, or for what value, he became the holder." I need only refer to Chitty on Bills (9th ed.), 648, for the established rule. If the plaintiff fails to show, in such case, that he came by the note in the due course of trade, and before it fell due, then the defendant is entitled to a verdict.

3. In regard to the question of the competency of Strader's evidence, I have found much difficulty. The competency of Strader to depose, in the principal opinion, is held to be governed by the cases of United States Bank v. Dunn, 6 Pet. 51, and Bank of Metropolis v. Jones, 8 Pet. 12. In the one case, Carr, the first indorser, was introduced by the second indorser, Dunn, who was sued to make out a defence. In the second case, Jones, the indorser and defendant, introduces Mr. Blake, the maker of the note, to establish a defence; and, in each instance, this court held that the witness was incompetent to invalidate the negotiable paper to which he was a party; and the decision in Walton v. Shelley, 1 Term R. 296, was followed. Of this case, Mr. Chitty says (669), — "Though it was formerly held, that no party should be permitted to give testimony to invalidate an instrument he had signed, a contrary rule now prevails"; and refers to Bent v. Baker, 3 Term R. 36, and

Jordaine *v.* Lashbrooke, 7 Term R. 601. "The general rule is," says Chitty, "that it is no objection to the competency of a witness, that he is also a party to the same bill or note, unless he be directly interested in the event of the suit, and he be called in support of such interest; or unless the verdict, to obtain which his testimony is offered, would be admissible evidence in his favor in another suit." This was the principle on which the cases of Bent *v.* Baker and Jordaine *v.* Lashbrooke proceeded. By the statute of 3 and 4 Will. IV., ch. 42, § 26, for the amendment of the law, the rule was enlarged, so as to let in parties to negotiable paper as witnesses for or against whom the verdict and judgment might be evidence, the statute providing that the record should not be evidence for or against them. And thus the law of evidence, in this regard, now stands in the courts of Great Britain. It is also settled, and had been, long before 1832, when the decision in the Bank of the United States *v.* Dunn was made, in a large majority of the States of this Union, in accordance with the principles laid down in Jordaine *v.* Lashbrooke, and Bent *v.* Baker; and the question now is for this court to determine how far the United States Circuit Courts, when acting in the States, shall enforce the doctrine laid down in Dunn's case, and which was very properly applied in that of Jones. The decision is, — "That no man who is ' *a party?* to the note or bill shall, by his own evidence, invalidate it." But suppose he is no *party* to it, and that his name has been put on it, or to it, by forgery, and he is called on by another to establish that the defendant's name was forged, as well as that of the witness, is he then competent? He gave no credit to the paper; and, if the evidence of all those who could prove the defence is cut off, by the mere name appearing, nothing more would be required to effectuate the fraud, than to put on the names of all persons who could prove the fraud. In such an instance, I feel sure the rule laid down by this court does not apply. Nor can I, satisfactorily to my own mind, distinguish the case put from one where a fraudulent note is made in the name of a firm, by one of the original partners, after the dissolution of the partnership, when he had no authority to use the name of those he attempts to bind. Indeed, it is difficult to say that Stevenson was not guilty of forgery, if he made the notes, and passed them off to Stinson & Campbell, after the dissolution of the partnership, in discharge of his own debt, and with the intention to defraud his former partners. In the cases that have heretofore come before this court, the witnesses proved in advance that they gave credit to the paper, by signing their names; and that they were, beyond dispute, *parties* to it, as well as the defendant.

The principle assumed in Walton *v.* Shelley is in violation of one of the most familiar and general principles of evidence known to courts of justice; that is to say, that any person of sufficient

age and sanity can be a competent witness to depose in any cause where he is not directly interested in the event of the suit. To this rule there are exceptions, but they are almost uniformly favorable to the admission of the testimony, are of comparatively recent origin, founded on experience, and conducive to the due administration of justice in a high degree.

Again, the act of May 19, 1838, declares, that "the forms and modes of proceeding in suits in the courts of the United States (in States admitted into the Union since 1789), in those of common law, shall be the same in each of those States respectively as are now used in the highest court of original and general jurisdiction of the same."

That the court below proceeded, in the admission of Strader as a witness, according to the modes of proceeding in the Circuit Courts of the State of Alabama, is not questioned. The method and manner of administering justice in the State courts is the *mode* referred to in the act of Congress, as I understand it ; and I cannot resist the conclusion, that the modes prescribed by the act of Congress to the federal courts held in that State embrace the rules in regard to the competency of evidence ; without evidence there can be no proceedings ; rules for its admission are indispensable ; these rules must be derived from some authority ; from statutes they cannot be, and therefore Congress has said the State courts shall furnish them to the foreign tribunals administering the laws there, — and this for the plain reason, that the measure of justice shall be the same in the foreign that it is in the domestic tribunals, and evidence is the measure of justice in great part.

There can be no objection to the competency of Strader because he was a party of record. The original writ issued against him and Perrine jointly ; but Strader was not found, and a *nolle prosequi* was entered as to him, and Perrine was declared against alone.

I concur that the charge of the Circuit Court was erroneous in so far as it assumed that the instruments sued on were subject to the same equities in the hands of Smyth that they were when held by Stinson & Campbell. The courts of Alabama have construed the statutes of that State affecting negotiable paper, and held they did not apply to notes payable in bank ; of which description are the ones sued on. The charge, therefore, violated the commercial rule, that the innocent indorsee takes the paper discharged of a previous infirmity.