In re McINTIRE et al.

(District Court, D. Montana.  August 17, 1903.)

No. 173.

**1. BANKRUPTCY—PARTNERSHIP DEBTS—FIRM NOTE GIVEN FOR INDIVIDUAL DEBT.**

A partner cannot bind the firm by notes given in the firm name in renewal of his individual notes, and the burden rests upon the creditor seeking to prove the same against the partnership estate in bankruptcy to show that the other partner or partners knew of the transaction, and assented thereto.

In Bankruptcy.  On review of referee's decision allowing the claim of the First National Bank of Miles City, Mont., in the sum of $15,920.84.

O. F. Goddard and Norman Fetter, for petitioner.
Strevell & Porter, for claimant.

KNOWLES, District Judge.  The First National Bank of Miles City, Mont., a creditor of said bankrupts, filed its claim against them for an overdraft and on 45 promissory notes (41 of which were collaterals), in the sum of $18,378.21, and for interest thereon at the rate of 10 per cent. per annum.  The referee allowed the claim in the sum of $19,012.21, including $635.86 for interest.  Thereafter the State National Bank of Miles City, Mont., a creditor of the bankrupts, filed its petition with the referee, in which it prayed that the claims of said First National Bank might be expunged and disallowed, upon the ground that all of said claims were and are liabilities of H. W. McIntire and the McIntire Mercantile Company to said First National Bank, which had been incurred and contracted prior to the formation of the partnership of McIntire & Middleton; that said notes were given in renewal of antecedent debts due said bank from H. W. McIntire and the McIntire Mercantile Company, such notes being signed and indorsed by said H. W. McIntire in the name of the firm of McIntire & Middleton, without the knowledge and consent of Fred. F. Middleton, his copartner, and not ratified subsequently by said Middleton, and that he has no knowledge of said liabilities of said McIntire and the McIntire Mercantile Company until the time of the filing of the petition in bankruptcy herein; that said Middleton never at any time assumed or consented to the assumption of said indebtedness, or of any part thereof, by the firm of McIntire & Middleton.  Thereupon the referee made an order requiring said First National Bank to show cause before him why its said claims should not be expunged in accordance with the prayer of said petition.  The First National Bank made answer to the petition, and, in substance, denied all of the allegations therein made, and affirmed that all of its claims as allowed by said referee were actual claims subsisting against said firm, and were just, and that said firm had received the entire proceeds thereof from said bank.  Thereafter the matter was heard by said referee, and much testimony was taken, and,

after considering the same, the referee reduced the claim of the First National Bank from the sum of $19,012.21 to the sum of $15,920.84. In this ruling and decision of said referee the First National Bank acquiesced, but the State National Bank, being dissatisfied with the ruling and decision of the referee, prayed for a review, and brought the case to this court.

The testimony taken before the referee at the hearing on the order to show cause discloses the following: For a number of years prior to July 1, 1900, H. W. McIntire was engaged in business at Miles City, Mont. He afterwards adopted and used the trade name of McIntire Mercantile Company, and continued the use thereof, as its sole proprietor, and as the owner of its entire stock in trade, until the formation of the partnership between himself and Fred. F. Middleton. The new firm of McIntire & Middleton commenced to do business about July 1st, but the articles of partnership were not reduced to writing and executed between the parties thereto until July 10, 1900. The agreement of partnership was produced at the hearing and offered and received as evidence. From the terms thereof it will be found: That the partnership was to continue for the term of five years. That the firm name was to be McIntire & Middleton, and they were to engage in the business of buying, selling, and dealing in all kinds of merchandise in Custer county, Mont., at wholesale and retail. The common stock of the partnership consisted of money and merchandise to the full value of $30,000, of which each party has contributed and paid in a one-half part. Each of the partners was to bestow and give his full time, labor, skill, knowledge, and services to the business of the firm. The shares of the partners in the profits or losses of the business were to be equal. At the time of the formation of this partnership the entire stock of goods, wares, and merchandise of the aforesaid McIntire Mercantile Company was the property of H. W. McIntire, its sole proprietor, and the same was to be taken over by the new firm of McIntire & Middleton. An inventory and valuation of this stock was to be made, and when so made and ascertained Middleton was to acquire a half interest therein by the payment of $2,500 in cash and executing to McIntire promissory notes for the remainder of the purchase price of said half interest. Middleton paid the $2,500 in cash, and the firm of McIntire & Middleton went into possession of the aforesaid stock of merchandise. An inventory of it was made, but the evidence is not clear as to whether or not it was valued, and its total value ascertained and extended on the inventory book. The book containing the inventory went into the possession of McIntire, and has never been produced. Middleton avers in his testimony that, owing to the total valuation of the stock never having been computed and communicated to him, he had failed to execute his promissory notes to said McIntire for the difference between his cash payment and the total amount of the purchase price of his half of the McIntire Mercantile Company's stock taken over by the firm, as contemplated at the time of the formation of the partnership. During the time while McIntire was engaged in business as H. W. McIntire and

under the trade name of McIntire Mercantile Company, he became and was heavily involved in debt. Most of this indebtedness, if not all of it, was held against him by the First National Bank of Miles City. Its form was promissory notes executed either in his individual name or in the name of the McIntire Mercantile Company. About $20,000 of this indebtedness was in existence at the time of the formation of the firm of McIntire & Middleton. · It is conceded that in the division of the work to be done by the partners in the firm McIntire undertook to take sole charge and assumed control of the financial and accounting part of the business, and Middleton gave his attention to the management of the sales department, giving that part of the business his entire attention and supervision. It is but fair to assume that this took up and occupied all of his time during the business hours of the day. It is also fair to assume that Middleton, as a partner in the firm, had access to the books, and might have inspected and examined them had he desired so to do; but the evidence does not clearly establish the fact that he did so. His failure to avail himself of his rights in that regard must be viewed and considered by the court in the light of the circumstances and conditions connected therewith and the relations between the parties. These men were partners; consequently a fiduciary relation existed between them, and Middleton was justified in assuming that McIntire would deal fairly with him, and would keep just and true accounts of the transactions and business of the firm.

It also appears from the testimony that prior to the time of the formation of the partnership of McIntire & Middleton, McIntire had, jointly with one J. A. Engleke, executed a promissory note for $5,572.15 to the First National Bank. This was done to enable said Engleke to purchase a stock of goods and engage in business for himself in said Miles City. That afterwards, and subsequent to the time of the formation of the partnership of McIntire & Middleton, said McIntire, for purposes of protection, procured the purchase of the Engleke stock of goods by McIntire & Middleton, and in consummation of this purchase they took up the McIntire-Engleke note at said bank, and gave their own firm note in the place thereof. In the settlement between the parties, after a valuation of the stock had been made and computed, it was found that the value of the stock was less than the amount of the McIntire-Engleke note assumed by the firm. This difference was $1,067. In settlement of this difference Engleke gave his own promissory note for that amount to McIntire, who discounted the same at the First National Bank. There is evidence to support the claim that the proceeds realized from this discount were applied for the benefit of McIntire & Middleton. Under these circumstances I have concluded to allow the bank's claim for this note, although I have some doubt as to the propriety of so doing. It is clear that the note for $5,572.15 is a liability of the firm of McIntire & Middleton, and the same is allowed.

As to the note for $1,200, it is clear that this was given for the amount of an overdraft of the firm of McIntire & Middleton at the bank, and it is entitled to allowance, and it is hereby allowed.

As to the notes for $2,500 and $4,000, respectively, which are

claimed to be firm liabilities of McIntire & Middleton, and which have been allowed by the referee as claims against the estate of said bankrupts, it appears from the evidence that both of these notes are renewals of notes for the same amounts due to the First National Bank from the McIntire Mercantile Company. It is claimed that the firm of McIntire & Middleton assumed these liabilities of the McIntire Mercantile Company at the time of the formation of this firm. I fail to find sufficient evidence in the record to support this claim. No consideration appears to have passed from the First National Bank to McIntire & Middleton for such assumption. The fact that McIntire deposited the funds of McIntire & Middleton in said bank would not establish this. Certainly the act of assumption of the payment of these notes must be the act of all the partners. McIntire alone would have no authority, by virtue of his partnership relation with Middleton, to make such a contract.

In McNair v. Platt, 46 Ill. 213, the Supreme Court of that state, speaking through Mr. Justice Walker, says:

"As a general rule, one partner is not bound by the unauthorized acts of his copartner; but from the very nature of a partnership each member of the firm is presumed to have, and has, authority to bind the firm within the scope of the business of the copartnership. Beyond the scope of its business, authority to act must be shown, precisely as if any other person had performed the act, or the firm will not be bound. The application of partnership funds or property to the payment of a debt of one member of the partnership is outside of and beyond the scope of its business, and assent to such application must be shown, or a subsequent ratification proved. * * * The separate debt of McNair cannot, then, be paid with partnership funds without the assent of Akers, the other partner. Such assent was the subject of proof, like any other fact, and might be shown by the same character of evidence."

In the case of Mecutchen v. Kennady, 27 N. J. Law, 236, it is said:

"The authority of the individual partner to bind the firm by the drawing or indorsing of negotiable paper extends only to the trade or business of the firm. * * * It is equally well settled that, where one partner employs the funds of the firm in payment of his individual debt, the creditor knowing that fact will be deemed to act in bad faith and in fraud of the partnership. And where funds or the paper of the firm is taken in payment of the private debt of one of the partners the law charges the creditor with a knowledge of the fraud, and imposes upon him the onus of repelling that presumption."

The following cases go to the same point and effect: Smyth v. Strader, 4 How. 404, 11 L. Ed. 1031; Ft. Madison Bank v. Alden, 129 U. S. 372, 9 Sup. Ct. 332, 32 L. Ed. 725; United States Bank v. Binney, 5 Mason, 176, Fed. Cas. No. 16,791; Corwin v. Suydam, 24 Ohio St. 209; Farwell v. St. Paul Trust Company (Minn.) 48 N. W. 326, 22 Am. St. Rep. 742.

Lanier v. McCabe, 48 Am. Dec. 173, is a case like the one at bar, and the Supreme Court of Florida said:

"A note given in the name of the firm by one partner, for his own private debts, and known to be so given by the person taking it, does not bind the other partners, unless they were previously consulted and consented to the transaction."

See, also, Dob v. Halsey, 8 Am. Dec. 293; Thomas v. Stetson, 62 Iowa, 537, 17 N. W. 751, 49 Am. Rep. 148.

The evidence shows that the First National Bank took these notes

of McIntire & Middleton for the individual debts of H. W. McIntire and the McIntire Mercantile Company, and the above-cited authorities establish the rule that said bank knew of this fraudulent use of the firm name, as it nowhere appears that Middleton ever gave his consent to the making of these notes, or to the assumption of any of the H. W. McIntire and McIntire Mercantile Company's liabilities by the firm of McIntire & Middleton.

It is claimed that Middleton would be presumed to know what appeared in the books of the firm. One of the authorities above cited supports this view. But I fail to find that the books show these transactions. It devolved upon the bank to show that they did in order to charge Middleton with notice thereof.

In accordance with the views above expressed, the decision of the referee herein is affirmed as to all the notes allowed by him against the estate of said bankrupts, save and except the note for $2,500 and the note for $4,000, and as to these two notes the decision of the referee is reversed, and he is directed to expunge the same, and further reduce the total of the claim of said First National Bank of Miles City, Mont., to the extent of the amount thereof and the interest accrued thereon. It is further ordered that the costs incurred herein be divided equally between the petitioner and the claimant, each to pay one-half thereof.