### JOHN TAYLOR DAVIES

*v.*

### JOHN A. ATKINSON *et al.*

*Filed at Ottawa May 9, 1888.*

1. PARTNERSHIP —*payment of individual debts out of partnership funds—recovery back by the other partners.* Where an individual creditor of a partner knowingly receives payment of his claim out of the partnership funds, it is *per se* a misappropriation of the assets of the firm to that extent, and it may be recovered back for partnership purposes.

2. But when such payment is made with the consent, express or implied, of the other partners, the latter will have no right to recover the money back to satisfy any demand they may have against the firm.

3. SAME—*conditions to recovery back as to money so misapplied.* Even in case money so misapplied in payment of individual debts may be recovered back in the names of the other partners, or in the name of the firm, for the use of firm creditors, a suit in equity can not be maintained for such purpose without showing the insolvency of the firm, and that the money sought to be recovered is necessary for the payment of firm debts.

4. And on bill by one partner to recover back payments made by the other of his individual debts from the partnership funds, it should be shown that such payments exceeded the sum the latter was entitled to draw from the firm on his own account.

5. SAME—*of notice to the individual creditor—that he will be required to refund.* If a partner misappropriates the firm assets by the payment of his individual debts, without the knowledge of the other partners, it is their duty, upon learning the fact, to notify the persons so paid of their intention to hold them liable, so as to enable them to take steps to secure themselves. A delay of nearly two years to take steps to collect such payments of the individual creditors so paid, is unreasonable.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. SMITH & PENCE, for the appellant:

When an individual creditor receives his pay out of partnership funds, knowing them to be such, he must refund. A subsequent positive ratification will alone relieve him of such liability. Story on Partnership, secs. 131-133; 2 Kent's Com. 42, 43; 1 Am. Lead. Cas. 507; *Rodgers* v. *Batchelor,* 12 Pet. 221; *Ensworth* v. *Everingham,* 7 Wend. 326; *Brewster* v. *Mott,* 4 Scam. 378; *Gray* v. *Ward,* 18 Ill. 32; *McNair* v. *Platt,* 46 id. 211; *National Bank* v. *Hyde Park,* 101 id. 595; *Bodenham* v. *Hoskyns,* 13 Eng. L. and Eq. 222; Collyer on Partnership, secs. 500, 501.

Mere delay, short of the Statute of Limitations, is not sufficient to bar the right. *Gibbons* v. *Hoag,* 95 Ill. 69; *Hefner* v. *Vandolah,* 57 id. 520.

It is essential that *laches* should be a bar, that the other side should be acting in ignorance of the real condition of his title, and in the supposition that he was rightful in his own dealing. 2 Pomeroy's Eq. Jur. sec. 818, and notes; Kerr on Fraud, 133, 188; *Renie* v. *Young,* 2 DeG. & J. 136; *Kinney* v. *Brown,* 3 Ridg. 518; *McCormick* v. *McMurtie,* 4 Watts, 192.

*Laches* can only be invoked when the party claiming has been guilty of such gross negligence as to amount to a constructive fraud. *Brant* v. *Virginia Coal Co.* 93 U. S. 326; *Henshaw* v. *Bissell,* 18 Wall. 255; Bigelow on Fraud, 440.

A covenant not to sue, such as this, is not a release of the individual debtors of Atkinson. *Parmelee* v. *Lawrence,* 44 Ill. 405; *Lumberman's Ins. Co.* v. *Preble,* 50 id. 335; *Mueller* v. *Dobschuetz,* 89 id. 176.

476 DAVIES *v.* ATKINSON *et al.*

Briefs for the Appellees. Opinion of the Court.

Mr. WILLIAM GARNETT, Jr., for the appellees Logan & Dunn :·

There was authority, both express and implied, and ratifi-· cation, whereby Atkinson was authorized to use firm checks. in payment of his debts.

Mere delay will bar such a suit. *Marine Co.* v. *Carver,* 42'· Ill. 66; *Dobbs* v. *Halsey,* 16 Johns. 39; *Reynolds* v. *Kenyon,.* 43 Barb. 585; *Casey* v. *Carver,* 42 Ill. 225.

Mr. H. S. MONROE, for the appellee Sherwin.

Messrs. BISBEE, AHRENS & DECKER, for the other appellees :·

Appellant did not show, by competent evidence, that at the· time of the trial there were creditors whose claims remained. unpaid, or that the firm was insolvent.

The failure of appellant, after notice to repudiate the acts· of Atkinson, and notify the appellees of that fact, is a bar to· a recovery. *Marine Co.* v. *Carver,* 42 Ill. 66; *Bennley* v. *Rice,* 18 Texas, 481; *Corbin* v. *McChesney,* 26 Ill. 231; *Perry* v. *Bank,* 14 Ga. 699; *McNiel* v.· *Reynolds,* 9 Ala. 313; *Todd* v.. *Lorah,* 75 Pa. 196; *Ferguson* v. *Gordon,* 1 Sneed, 254.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 20th day of July, 1880, the appellant, John T. Davies,. of Liverpool, England, and the appellee John A. Atkinson, of Chicago, Illinois, entered into a written agreement to become co-partners together, under the firm name of Davies, Atkinson. & Co., "in the business of buying hogs and hog products, and. curing, packing and shipping the same to J. T. Davies & Co.,. of Liverpool, England, for sale, on account of the firm of Davies, Atkinson & Co., on commission;" also, for buying· provisions, on commission, for shipment to the continent of Europe, and elsewhere. The partnership business was to be· conducted at Chicago, where the same business had previously been carried on between Davies and Isaac Atkinson, the father of Atkinson, lately deceased. The business was to continue

indefinitely, at the will of the parties, and until determined as in the agreement provided. By the third article of the agreement it is provided as follows:

"*Third*—It is expressly agreed, that during the existence of the said co-partnership, the said John Arthur Atkinson shall draw from the said firm a sum not exceeding twenty-five hundred ($2500) dollars half-yearly, and that all sums so drawn by him shall be charged against his share of the profits in said concern. It is also agreed, that during the existence of said co-partnership the said Atkinson shall not buy, sell, speculate with or mortgage any firm assets, except as required in the ordinary co-partnership business, and that the said Atkinson shall not engage in any speculations or business ventures on his own account, outside of the business of the said firm, and shall not sign or indorse any notes, bonds or obligations for other parties, either as security or otherwise, or in any manner become surety for any person or persons whomsoever, without the consent of said John T. Davies."

The partnership continued from the date of the articles until the 4th day of October, 1884, when it was formally dissolved. The business during this time was conducted mainly under the personal supervision of Atkinson, the complainant being in Europe much of the time.

On the 21st of October, 1884, Davies filed in the Superior Court of Cook county the original bill in this case, making Atkinson, alone, defendant, charging him with gambling upon the Chicago Board of Trade, in violation of the articles of partnership, and with misappropriating the partnership funds to pay individual losses thus incurred, amounting, in the aggregate, to $200,000. The bill prayed for the appointment of a receiver, an accounting, and a settlement of the partnership affairs. The day after the filing of the bill, Atkinson entered his appearance, and filed an answer, wherein it was admitted that he had speculated on the board of trade on his own account, and drawn checks on the partnership funds in

payment of his individual losses, in favor of the various persons mentioned in the bill, to the amount of $27,012.50, but it is charged that those transactions were legitimate, and according to the custom and usages of the board of trade, and that the various checks drawn by him in payment of his losses were charged up to him on the partnership books. The checks in question were drawn in favor of, and were paid to, appellees other than Atkinson.

On the 23d of October the court made an order appointing Robert Y. Hobden receiver, who made an inventory of the visible assets of the firm, which amounted in value to $45,006.45, and were subsequently sold by him for that sum. On the same day Davies brought an action of account against Atkinson, on the law side of the court, respecting the same partnership dealings involved in the chancery suit. On the 26th of January, 1885, the court, on the application of the complainant, entered an order in the chancery suit, staying the same so far as it sought an accounting, leaving that matter to be settled in the action at law. The suit was continued, however, for the purpose of collecting and disbursing the assets among the creditors of the firm. On the 15th of May, 1886, the complainant filed an amended supplemental bill, making the present appellees defendants thereto, wherein it is sought to charge them as payees and recipients of the proceeds of the checks drawn by Atkinson on the partnership funds to pay his individual losses on the board of trade, as heretofore stated. Three days after the filing of this bill, Davies and Atkinson, without any account having ever been taken showing the state of the account between themselves respecting their partnership dealings, came to a settlement as between themselves, whereby Davies acquitted and discharged Atkinson of all liability to himself on account of or growing out of the co-partnership, but reserved the right to make whatever he could out of any other persons that might, on any account or in any manner, be liable to the firm.

The appellees other than Atkinson answered the amended supplemental bill, denying the equities thereof, and alleging that Davies had knowledge of the manner in which Atkinson conducted the business of the firm; that he knew that Atkinson kept no individual bank account; that he was speculating on the board of trade, and paid losses by checks on the partnership funds, as is admitted to have been done. It was further answered, that there had been a compromise and full settlement between Atkinson and complainant, by which the former was released and discharged from accounting to Davies respecting their partnership dealings, and from all liability on account of the firm debts, as above stated.

On the hearing, the Superior Court found the equities with the defendants, and entered a decree dismissing the bill, which, on appeal, was affirmed by the Appellate Court, whence the record is brought here for review.

While we think the general theory upon which the amended bill was drawn, is, as matter of law, correct, and that such a bill, under certain circumstances, might well be maintained, yet we. are clearly of opinion that the evidence fails to sustain the present bill. The principle is well recognized, that where the individual creditor of a partner knowingly receives payment of his claim out of the partnership funds, it is, *per se*, a misappropriation of the assets of the firm to that extent, and it may be recovered back to answer partnership purposes. But it is equally clear, that where such payment is made with the consent, express or implied, of the other partners, the latter would have no right to recover the money back, to satisfy any demand they might have against the firm. And even conceding it might be recovered in their names, or in the name of the firm, for the use of the firm creditors, it is manifest that a suit in equity could not be maintained for such purpose without showing the insolvency of the firm, and that the money sought to be recovered was necessary for the payment of firm debts.

We think, outside of the positive testimony of Atkinson to that effect, that all the circumstances tend strongly to show that Davies knew how the business of the firm was being conducted, and the manner in which the books were kept. The amount of the checks in question was all charged up to Atkinson on his individual account, and it would be taxing credulity beyond all reason to suppose a successful, active business man like Davies would have allowed that system of business to go on for four years without knowing something about it. It is true, Davies swears that he knew nothing about it until the time of the dissolution, in 1884; yet the weight of the evidence is against him on this question. But suppose he is right in this matter, we are, on other grounds, still of the opinion the law is with the appellees. Conceding appellant knew nothing about Atkinson's misappropriation of the partnership funds at the time it was going on, and learned of it first about the time of the dissolution, what was his duty if it were his intention to hold appellees responsible for the proceeds of the checks in question? Unquestionably, he should have notified them of such intention, so that they could have taken immediate steps to save themselves, out of any individual estate that Atkinson might then have had. But this was not done. Instead of telling them what they might expect, he remained silent from the 4th of October, 1884, (the date of dissolution,) till the 15th of May, 1886. Four days after this, upon the settlement between Atkinson and Davies, as heretofore stated, Atkinson and wife released and conveyed to Davies all their interest in the estate of Isaac Atkinson, deceased. As there never was any investigation as to how the actual account stood between these parties, it is not positively certain but what, as between themselves, Atkinson was entitled to the full amount of money drawn out on the checks; yet the probability is, of course, the other way. In any event, we think appellant's delay in proceeding against the appellees, even upon his own statements, was unreasonable.

Outside of all this, it is an undisputed fact, shown by the articles of partnership themselves, that Atkinson was authorized to draw upon the partnership funds, on his individual account, to the extent of $5000 per annum, which, for the period covered by the partnership, amounted to over $20,000. This, taken in connection with the further fact that whenever Atkinson made anything in his speculations on the board of trade, which he swears frequently occurred, he turned it into the partnership fund and credited himself with the amount, so that it is not clear but what these sums, when added to the amount he was authorized to draw out, will fully cover the checks in question. Be this as it may, we are clearly of opinion that the evidence fails to make out such a case as warranted the relief sought.

Being fully satisfied with the conclusion reached by the lower courts, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*