JOHN V. FARWELL and others *vs.* ST. PAUL TRUST COMPANY, Receiver.

March 9, 1891.

**Promissory Note—Parol Agreement at Time. of Indorsement, Waiving Demand and Notice.**—The indorsee of a negotiable promissory note cannot show, as against the indorser, that at the time of the indorsement it was verbally agreed that presentment for payment at maturity, notice thereof, and notice of non-payment need not be made or given.

**Same — Excuse for Non-Presentment—Insolvency of Maker.**—When a place of payment is designated in the note, the indorsee is not relieved of the duty of presenting the same for payment at such place by reason of the insolvency of the maker, or because he has removed from the state.

**Use of Firm Money by Partner to Pay his Own Debt — Proof Required of Creditor.**—One partner cannot, without the consent, express or implied, of the other members of the firm, use the funds or the property of the firm to pay. or settle, or cancel his individual liabilities; and a creditor receiving such funds or property, having knowledge of the misapplication, cannot retain the funds or the property. Further, the burden is on the creditor to show consent of the other partners.

**Findings—Evidence.**—The finding of the trial court that appellants received from their debtors certain notes of third parties in payment of an account due appellants was justified by the testimony.

Plaintiffs presented a claim of $44,374.02, with interest, against E. Allen & Co., insolvents, to the defendant, which was receiver of the

insolvent firm, which claim was wholly disallowed by it. Plaintiffs thereupon appealed to the district court for Ramsey county, where the action was tried before *Kelly*, J., who ordered judgment allowing the claim to the amount of $31,444.49. Plaintiffs appeal from the judgment.

*Howard L. Smith*, for appellants.

*John B. & W. H. Sanborn*, for respondent.

COLLINS, J. In the consideration of this case it will be assumed without discussion, and without deciding the point, that Ettelsohn, who attempted to become a special partner in the firm of E. Allen & Co., (see *In re Allen*, 41 Minn. 430, 43 N. W. Rep. 382,) possessed either the power and authority of a general partner or that of an agent when transacting the business with appellants out of which arise their claims against respondent as receiver in insolvency. This assumption brings us at once to a brief statement of the facts surrounding the transaction, and to the merits.

Allen and Levinson were general partners, looking after a mercantile business in St. Paul. Appellants were engaged in the wholesale trade in Chicago, where Ettelsohn resided. E. Allen & Co., the insolvents, were dealing quite extensively with appellants, and Ettelsohn was attending to nearly all of their part of the business. E. Allen & Co. had an opportunity to sell a bill of goods to Long & Glennon, traders at Mankato, Minn., upon time. Ettelsohn called upon appellants in reference to such a sale, and it was agreed that if the sale was made the latter would take Long & Glennon's notes upon account, when indorsed by Ettelsohn personally and by his firm. The sale was made, and the purchasers executed 13 promissory notes, bearing date April 9, 1888, payable to their own order at intervals of 15 days, the first, 235 days from date. These notes were then indorsed by Long & Glennon, delivered to Allen & Co., and immediately forwarded to Ettelsohn, who at once placed his own name and that of the firm upon the back of each, and delivered them to appellants, with the understanding that they should be discounted. This was done by appellants, and the trial court found as a fact that the proceeds were applied by the latter in *payment* of the balance then owing appellants by Allen & Co. on account of goods sold between September 1 and

December 31, 1888. These notes were made payable at the office of the makers at Mankato, but were not presented there or elsewhere for payment as they matured. On January 19, 1889, Long & Glennon made an assignment under the insolvency act, and then removed from the state. To avoid the effect of a failure to present the notes at maturity, to give notice thereof, and of the makers' default, appellants offered to prove on the trial that, at the time of the indorsement, demand upon the makers at maturity, notice thereof, and of non-payment, were verbally waived by the indorsers, Allen & Co. The question is by no means a new one, and goes to the competency, as between indorser and indorsee, of testimony tending to show that, contemporaneously with the indorsement, there was a parol agreement which materially changed the contract from what it appeared to be, and relieved one of the parties from the performance of certain acts otherwise resting upon him. To put it in other words, the object of their proposed testimony was to transform the contract from one of conditional to one of absolute liability.

From the earliest history of the state this court has steadily resisted the attempts which have frequently been made to vary or explain by parol the ordinary indorsement of a promissory note, by means of which the usual liability and contract of the indorser might be enlarged or diminished, made greater or less, as interest demanded. The most notable of the earlier cases was that of *Kern* v. *Von Phul,* 7 Minn. 341, (426,) where a regular indorser in blank sought to show that he was an indorser without recourse. We do not feel called upon to review this line of cases, but content ourselves by saying that, while this precise question was in neither, it was practically settled by the reasoning and conclusion in the cases of *First Nat. Bank* v. *Nat. Marine Bank,* 20 Minn. 49, (63;) *Barnard* v. *Gaslin,* 23 Minn. 192; and *Knoblauch* v. *Foglesong,* 38 Minn. 352, (37 N. W. Rep. 586.)

The contract of indorsement is twofold,—that of sale and transfer, and that of conditional liability. When in blank, as in the case at bar, all of the authorities concur in saying that a well-defined contract has been made, as full and complete as if explicitly expressed in writing. On what principle can it be urged, then, that testimony

which would be incompetent and inadmissible to vary, alter, or control a written agreement can be receivable to vary, alter, or control, and even to destroy, the contract entered into by the regular indorser in blank? And if there is any rule of evidence, save in a few exceptional cases referred to in *First Nat. Bank* v. *Nat. Marine Bank*, *supra*, whereby parol testimony may be received to vary or alter the contract, at what point short of that which may totally destroy it can the line be drawn? The contract is admittedly of the same force as though it were reduced to writing, and for that reason it can only be limited or enlarged or impeached with safety by the same class of testimony. If the indorser wishes to qualify his liability, apt words are in common use which he must adopt, or he must in some other manner clearly indicate that his indorsement is limited to a transfer of the paper, and nothing more. If a transfer of title is desired, with a complete and unconditional assumption of liability by the indorser, equally as apt and common phrases are at hand which may be written above the indorser's signature, and the indorsee must see to it that they are used, thus relieving the transaction of its doubt and uncertainty. We regard it as of great importance that the rules respecting negotiable paper should be clear, and the whole story of its obligation should appear upon it. The indorsee must not be permitted, as against the indorser, to show that at the time of the indorsement it was verbally agreed that presentment for payment, notice thereof, and of non-payment, need not be made or given. *Bank of U. S.* v. *Dunn*, 6 Pet. 51; *Renner* v. *Bank of Columbia*, 9 Wheat. 581; *Dale* v. *Gear*, 38 Conn. 15; *Bartlett* v. *Lee*, 33 Ga. 491; *Barry* v. *Morse*, 3 N. H. 132; *Charles* v. *Denis*, 42 Wis. 56; *Bank of Albion* v. *Smith*, 27 Barb. 489; *Campbell* v. *Robbins*, 29 Ind. 271; *Rodney* v. *Wilson*, 67 Mo. 123; *Hoare* v. *Graham,* 3 Camp. 57; *Free* v. *Hawkins*, 8 Taunt. 92.

We are aware of the existence of a very respectable number of authorities to the contrary, and that in some of the recent text-books the opposite rule is announced as fully supported by the decisions, including those of the highest federal court; citing *Union Bank* v. *Hyde*, 6 Wheat. 572, and *Sigerson* v. *Mathews*, 20 How. 496. Neither of these cases support the claim made for them, and, as will be

seen upon examination of *Bank of U. S.* v. *Dunn, supra,* the court referred to has decided the question in accordance with the views herein expressed. But in some of the state courts, and particularly by some of the text-book writers, (judging from the indiscriminate manner in which authorities have been collected by the latter,) it would seem as if the distinction which can easily be made between evidence which tends to establish a contemporaneous parol agreement and that which might prove a waiver of demand and notice, verbally, and subsequently to the indorsement, has been completely overlooked.

The claim that, because of the insolvency and absence from the state of the makers of the notes when the greater number matured, demand of payment of these and notice of non-payment was excused, is without merit. It was the duty of the appellants to present the notes as they matured at the place fixed for payment, notwithstanding the insolvency of the makers when a portion thereof matured, and their removal from the state at a time thereafter not definitely fixed in the findings. *Michaud* v. *Lagarde,* 4 Minn. 21, (43;) *Hart* v. *Eastman,* 7 Minn. 50, (74;) *Herrick* v. *Baldwin,* 17 Minn. 183, (209;) Story, Prom. Notes, §§ 230, 286; 1 Daniel, Neg. Inst. 580. See, also, *Salisbury* v. *Bartleson,* 39 Minn. 365, (40 N. W. Rep. 265,) where some exceptions to the general rule are mentioned.

It is also argued by appellants that the court erred in refusing to allow them to recover upon the debt represented by the Long & Glennon paper. The finding of the court was that it was taken in payment of the account on which appellants base their third cause of action, and the testimony sustains the finding. The only witness who related the transaction (one of the appellant firm) admitted upon the trial that he purchased the paper from Ettelsohn, obtained the cash thereon by means of discounting, and, as directed by the latter, applied the proceeds in *payment* of this debt. The finding, justified as it was by the evidence, disposes of the contention that the debt was merely suspended pending the currency of the notes.

On July 2, 1888, Allen & Co. executed 23 promissory notes, payable to their own order, for the total sum of $25,000. The makers were then in embarrassed circumstances, and had been investi-

gated by the attorney for appellants just before that day.   It was
upon the suggestion of the attorney that these notes were made, with
the understanding that on his return to Chicago he would recom-
mend to appellants that they loan some money to Allen & Co.,
with which they could pay claims against them held by other credit-
ors, who were urging payment.   These notes were sent to Ettelsohn,
who called upon appellants for the purpose of completing the loan,
which was to be advised by the attorney.   The latter was called upon,
produced a statement of the assets and liabilities of Allen & Co., re-
ported what he had learned of the situation, and stated his conversa-
tions at St. Paul with Allen and Ettelsohn in reference to the loan.
Appellants consented to make the loan.   The notes were indorsed by
Ettelsohn individually and for his firm, and thereupon delivered to
appellants, who applied and credited the amount of the same to Al-
len & Co.'s account, which included an item of $7,000 cash, then
paid Ettelsohn, to be used to pay other firm creditors, two notes of
Ettelsohn,—one for $795.24, with interest thereon, $11.66,—and
notes of one Ginsberg, payable to appellants, but indorsed by Ettel-
sohn, aggregating the sum of $2,733.46.   Allen & Co. were in no
way concerned in the note of Ettelsohn for $795.24, besides interest,
or in the Ginsberg notes.   These were matters in which Ettelsohn
alone and individually was interested.   The trial court deducted the
sum of $3,540.36 from the amount found to be due appellants on
these notes, upon the ground that the application of that sum to the
taking up and cancellation of Ettelsohn's individual note and to the
Ginsberg paper was unauthorized, and without justification.   The
conclusion that Allen & Co. could not be held in the amount of these
obligations was undoubtedly correct.   Appellants had knowledge that
the firm was in financial distress.   Their attorney, sent specially to
investigate their condition, suggested the making of the notes for
$25,000 for a specified purpose, and as a way out of the difficulty.
This suggestion was acted upon by the active members of the firm at
St. Paul, and the notes transmitted to Ettelsohn at Chicago, that he
might carry out the purpose, which was to adjust an open account
held against the makers by appellants, and to take up a note made
by Ettelsohn for a firm debt, to obtain ready money with which to

meet the demands of other persons against the firm. Of the object for which this paper was made and sent to Ettelsohn appellants were advised at the time it was presented to and accepted by them, and their appropriation of any part to the cancellation of Ettelsohn's private debts or liabilities was wholly indefensible. Even conceding that Ettelsohn was a general partner as to appellants, he could not, without the consent, express or implied, of the other members of the firm, use the funds or the property of the firm to pay, or settle, or cancel his individual liabilities; and a creditor receiving such funds or property, having knowledge that they were misappropriated, as did appellants, could not retain the same. Further, the burden would be on him to show consent of the other partners. *Bank of Commerce* v. *Selden*, 3 Minn. 99, (155;) *Davis* v. *Smith*, 27 Minn. 390, (7 N. W. Rep. 731;) *Hinds* v. *Backus*, *supra*, p. 170. In this instance it was obvious that Ettelsohn's partners had no knowledge of the manner in which he acted.

This is not a case where one of a firm has been intrusted with the negotiable paper of the firm, and such paper has passed into the hands of a *bona fide* holder for value, and before maturity, as appellants' counsel appears to think.

It is further argued that the defence relied upon as to this cause of action was not within the pleadings. The answer averred a want of consideration for these notes; and, to the extent of the amount disallowed by the trial court, (the amount of the larger Ettelsohn note and the Ginsberg notes,) Allen & Co. received no consideration. Hence, the defence established was exactly within the issues. But, if this were not the case, all of the testimony relative to this point was received without objection.

Judgment affirmed.