James TITUS, Appellant,

v.

GULF LIQUID FERTILIZER COMPANY, d/b/a Western Chemicals, Appellee.

No. 5472.

Court of Civil Appeals of Texas.

El Paso.

March 29, 1961.

Rehearing Denied April 19, 1961.

Preston & Tomlin, Pecos, for appellant.

Dennison & Naylor, Pecos, for appellee.

LANGDON, Chief Justice.

Appellee, Gulf Liquid Fertilizer Company, doing business as Western Chemicals, brought this suit against Lonzo Stracner and appellant, James Titus, to recover on a promissory note executed by defendant Stracner and delivered to appellee, as well as on an open account created by Lonzo Stracner and appellant, James Titus, in behalf of Titus and Stracner Farm, a co-partnership.

Trial was had to the court without the intervention of a jury, and judgment was rendered in favor of appellee and against the defendant, Stracner, and appellant, Titus (jointly and severally), for the amount of the Stracner note (less certain credits), plus interest and attorney's fees on the unpaid balance; the amount of the sworn account plus interest thereon at the rate of six per cent per annum from January 1, 1959; and, in addition thereto, the sum of $1,250 attorney's fees. The judgment against Lonzo Stracner was rendered on default, and this appeal is brought by defendant James Titus, only.

Appellant's appeal is predicated upon fifteen points of error. The first three points are based on the contention that the trial court erred in rendering judgment against appellant, James Titus, on the promissory note sued on herein, because:

(1) Appellant Titus was not a party to said note, either by name, signature or endorsement;

(2) The agreement of Titus, if any, to pay said note was collateral, constituted a promise to answer for the debt of another, and was barred by the Statute of Frauds; and

(3) The agreement of Titus, if any, to pay said note was wholly without consideration and was, therefore, nudum pactum.

In sworn pleadings, appellant denied that he assumed or agreed to pay any part of the promissory note of Lonzo Stracner, and said if there was a promise or agreement by appellant to pay such note, such promise—if any was made—was without consideration and, therefore, without legal effect. Appellant plead the Statute of Frauds in bar thereof, alleging that appellee sought to impose an obligation upon appellant to answer for the debt of another under an alleged oral agreement. He also denied, under oath, that he was indebted to appel-

lee in the amount alleged, and said that he was indebted to appellee' on open account for fertilizer and insecticides furnished him during the 1958 crop year, in the sum of $697.80, and tendered such sum into the registry of the court to be paid to appellee pending final determination of the suit, in full satisfaction of his indebtedness.

The promissory note involved in this litigation was dated January 29, 1958. It was in the principal sum of $7,183.58, and had been executed by Lonzo Stracner and delivered to appellee to evidence a personal indebtedness owed by Stracner to appellee since 1957.

Shortly before or after the execution and delivery of the above note, appellant James Titus and defendant Lonzo Stracner formed a farming partnership. Appellant Titus testified that he did not know about the Lonzo Stracner note to appellee until about July 15, 1958, when he was told by Mr. Ferguson (Assistant Manager of Western Chemicals) that there was such a note. Admittedly, appellant James Titus was under no obligation to pay the note at the time it was executed and delivered to appellee by the defendant Stracner. It was no more than a personal obligation owed by Stracner to appellee, and it did not become a partnership obligation merely because Stracner and appellant agreed to become partners in the farming business.

The trial court, in its Findings of Fact filed herein, made the following finding:

> "That the Defendant James Titus
> * * * agreed to pay to plaintiff the
> indebtedness represented by the said
> note dated January 29, 1958, in the sum
> of $7,183.58, *or to see that same was
> paid*." (Emphasis supplied.)

The promise was admittedly not in writing. Assuming that the trial court correctly found, on sufficient evidence, that such a promise was made—does such promise constitute an unconditional promise to pay the debt of another, or is such promise conditional? If the promise found by the trial court to have been made *was a conditional promise to pay,* then even if such promise was made for a valuable consideration, it would be unenforceable under the Statute of Frauds (Article 3995, subdivision 2, Vernon's Annotated Texas Civil Statutes). What did appellant James Titus promise to do? Did he make an unconditional promise to pay the debt of Stracner and, in effect, agree to make such debt his own and to become primarily liable on it, or did he merely promise "to see that same was paid"? The trial court found that appellant promised to do one, or the other, but does not specifically find which of the two promises was actually made.

■ It has been held many times that a promise "to see that same is paid" is a collateral undertaking only, and does not constitute an independent undertaking or promise to pay the debt of another, in the absence of evidence to the contrary. Such a promise is nothing more than an offer to "guarantee" the debt of another, to pay if the debtor does not do so; and, as such, the promise is collateral and therefore within the purview of the Statute of Frauds, and consequently unenforceable. Hoffer Oil Corp. v. Haynes, Tex.Civ.App., 28 S.W.2d 1113; Nichols v. Dixon, Tex. Civ.App., 85 S.W. 1051; Id., 99 Tex. 263, 89 S.W. 765; 20A Tex.Jur. 298–299, sec. 27, Statute of Frauds.

■ We hold that the promise made by appellant, as found by the trial court, was not an unconditional promise to answer for the debt of another, but was a conditional or collateral promise; and, as such, was insufficient to remove this case from the operation of the Statute of Frauds. We therefore sustain appellant's Points 1 and 2.

In the event we are found to be in error in holding that appellant's promise to pay the note in question was a conditional promise to pay, it becomes important to determine whether such promise, if not otherwise barred by the Statute, is supported by adequate consideration.

The trial court found that defendant James Titus made the promise "in order to obtain credit for the partnership of Stracner and Titus from plaintiff during the 1958 crop year."

What is to be regarded as sufficient consideration to take the promise out of the Statute of Frauds, involves the determination of the relation which the consideration in the contract bears to the transaction itself.

■ The promise, or undertaking, is not sustainable if it was not supported by a consideration which appears to be adequate, sufficient, or independent. Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.2d 1; Higginbotham-Bartlett Co. v. Dickey, Tex.Civ.App., 27 S.W.2d 248; Fletcher v. Puckett, Tex.Civ. App., 170 S.W. 831.

In the case at hand, appellee contends that appellant promised to pay the debt of Stracner, amounting to $7,183.58, and in effect promised to make such debt his own and to become liable on it "in order to obtain credit for the partnership of Stracner and Titus from plaintiff during the 1958 crop year."

The evidence in this case is undisputed that appellant James Titus and defendant Stracner had already made arrangements for financing their 1958 crop long prior to July 15, 1958, when the alleged promise was elicited from Titus that he would pay the note or see that it was paid.

The evidence was that Titus and Stracner had secured a loan from Western Cottonoil Company "early in 1958" and had signed a joint note therefor for the purpose of financing their 1958 crop. Defendant's Exhibit 4 is a copy of their 1958 Farm Budget prepared by Western Cottonoil Company. It appears that the total requirements for the partnership farming operations for the year 1958 amounted to $32,671, and of this sum the amount of $7,596 was allocated to "poison and fertilizer" which, so far as this record reflects, were the only products sold by appellee, and were the only ones upon which appellee might have extended credit to appellant.

As set up, the budget provided for expenditures for poison and fertilizer, among other items, as follows:

| 1958 | Poison | Fertilizer |
|---|---|---|
| February | — | $2,000.00 |
| June | $ 563.00 | 740.00 |
| July | 1,125.00 | 740.00 |
| August | 1,125.00 | 740.00 |
| September | 563.00 | — |

■ The funds allocated for the above items were more than sufficient to meet the needs of the partnership for the 1958 crop year, since the record reflects that only $6,800 was actually spent for such purpose. Under such circumstances, it can hardly be assumed that appellant would agree to become primarily liable on the debt of another, amounting to more than $7,000, in order to obtain credit (which the partnership did not appear to need or require) in an amount, or to an extent, less than that of the debt he presumably obligated himself to assume.

It follows that we are of the opinion that the oral promise, if otherwise enforceable, was not supported by sufficient consideration to take it out of the Statute of Frauds, and that such agreement was nudum pactum; and we therefore sustain appellant's Point No. 3.

Appellant's Points 4, 5 and 6 are points by which it is contended that the trial court erred in rendering judgment against appellant, James Titus, on the 1958 account of Titus and Stracner, because said account had been fully paid and satisfied by the appellant; because appellee, being without authority to hold appellant liable on said note, was without authority to apply the partnership funds paid on the open account to the payment of said note; and because there was no proof that appellant, James Titus, authorized appellee to apply partnership funds to the discharge of the personal note of Lonzo Stracner.

426

The personal promissory note of Lonzo Stracner is in evidence, and on the reverse side thereof there is set forth a schedule of "Installment Due Dates" and "Principal Payments", by which the indebtedness was to be discharged. According to the schedule, payments were to be made as follows:

| | |
|---|---|
| July 15, 1958 | $1,500.00 |
| August 15, 1958 | 1,500.00 |
| September 15, 1958 | 1,500.00 |
| October 15, 1958 | 1,500.00 |
| November 15, 1958 | 1,183.58 |
| | $7,183.58 |

Under the undisputed evidence, no payments were due on the note of Lonzo Stracner until July 15, 1958, and no purchases had been made by the partnership from appellee prior to June 24, 1958. Consequently, neither Lonzo Stracner, individually, nor the partnership was, prior to such dates, obligated to pay anything to appellee.

The record reflects, however, that three partnership checks, drawn on partnership funds, were delivered to appellee and were credited by appellee, without instruction, to the note of Lonzo Stracner before any payment became due thereon.

The first check, dated March 1, 1958, in the amount of $1,500, shown to have been drawn for "fertilizer", was well within the $2,000 budgeted for fertilizer for the month of February, 1958, in the partnership farm budget; the second check was dated June 6, 1958, in the sum of $1,303, its indicated purpose being "Poison for June $563.00 Fertilizer for June $740.00", which were the exact amounts allocated for this purpose in their budget for the month of June. The third check was dated July 8, 1958, and was in the sum of $1,500, and was given for the indicated purpose, "Fert & Poison", which sum was also well within the $1,865 allocated in the budget for such items in July. The total of these three checks, amounting to $4,303 of the partnership funds, was credited by appellee to the personal note of Lonzo Stracner.

According to the books of appellant (Defendant's Exhibit 5), a fourth check, dated August 2, 1958, in the sum of $1,800, drawn on partnership funds, was sent to appellee, and the proceeds of this check (not in evidence) were credited against current 1958 purchases made by the partnership. The amount budgeted for fertilizer and poison for the month of August was $1,865. The total amount of the four checks actually paid to appellee, plus the sum of $697.80 tendered by appellant and paid into the registry of the court, amounts to $6,800.80, which was the amount of the purchases charged against the partnership for the 1958 crop year.

If it is true, as contended by appellant, that appellee had no authority to apply the partnership funds received by it to the personal obligation and note of Lonzo Stracner, and that such payments may only be applied to partnership debts, the payments made are sufficient to extinguish the partnership obligation, and only the personal note of Lonzo Stracner would remain unpaid.

█ It is not even contended that appellant James Titus made a promise to pay, or to see that the note of Lonzo Stracner was paid until July 15, 1958. Consequently such promise, if made, could not, we believe, under the facts of this case, be construed as authority for appellee to apply partnership funds received by it prior to that time, to a pre-existing, but personal, obligation of one of the partners. It is interesting to note that appellee, *after* presumably obtaining appellant's promise to pay or see that the note was paid, thereafter credited appellant's fourth check for $1,800 paid in August, 1958, *not to the payment of the note,* but to the payment of current accounts incurred by the partnership.

Appellee contends that, since the partnership made no purchases prior to June 24, 1958, and consequently owed no money to appellee prior to that time, it had the right to assume (in the absence of instructions

to the contrary) that the money received from the partnership, before any partnership debt was incurred, was intended by the partnership to be applied to the personal debt of one of the partners.

There is no dispute as to the character of the funds involved here; they were admittedly partnership funds, and this fact was known to appellee, or should have been known to it, at the time the proceeds of the checks were applied to the personal note or debt of the partner, Stracner. Each of the checks showed on their face that they were drawn against the account of the partnership.

■ Partnership funds are in the nature of a trust account, and the use of such funds by one partner as security for, or in payment of, his individual debts constitutes a constructive, if not actual, fraud upon a trust fund, and the person with whom he deals cannot hold it against other partners, or those claiming under them, unless he can show that he is a bona fide holder for value and without notice. Smith v. Green, Tex.Civ.App., 243 S.W. 1006 (wr. ref.); Brickett v. Downs, 163 Mass. 70, 39 N.E. 776; Davies v. Atkinson, 124 Ill. 474, 16 N.E. 899; Farwell v. St. Paul Trust Co., 45 Minn. 495, 48 N.W. 326.

■ Appellee applied the funds in this case to a pre-existing individual debt of one of the partners with notice the funds so applied were partnership funds. Thus, appellee clearly was not a bona fide holder without notice.

It is well established that a bank has no lien on a firm's deposit for a personal or individual debt of a partner (Shaw v. Centerfield Oil Company, Tex.Civ.App., 10 S.W.2d 144), and it may not charge an individual debt owed such bank by one of the partners against partnership deposits without the consent of all the partners, or a suit in which all the partners are parties and in which an accounting may be had to ascertain whether the individual has any balance due him. First State Bank of Denton v. Vestal & Naugle, Tex.Civ.App., 48 S.W.2d 706; Coleman Nat. Bank v. McDonald, Tex.Civ.App., 286 S.W. 487.

In the absence of the consent of the partners, either expressed or clearly implied, to apply partnership funds to the payment of an individual debt of one of the partners, appellee had no authority to do so, and his action was not binding on appellant. 70 C.J.S. Payment § 64, p. 268.

Appellant's Points 4, 5 and 6 are accordingly sustained.

Our holding sustaining appellant's first six points requires a reversal of this case, and renders it unnecessary to discuss other points raised by appellant on this appeal.

■ We hold that the partnership funds received by appellee, amounting to $4,303, may be applied by appellee only to the account created by the partnership, and not to the personal note of one of the partners. This sum, together with the sum of $697.80 tendered by appellant into the registry of the court when credited to payment of the partnership account, satisfies the account and renders the award of the sum of $1,250 attorney's fees for the collection thereof, unwarranted, and it must accordingly be set aside.

Appellee's cause of action and any recovery thereon is necessarily confined to a recovery on the personal promissory note of the defendant, Lonzo Stracner, who made no appeal from the judgment of the trial court and who, we find, is solely liable for the payment of the note.

It is ordered that the judgment of the trial court be reformed in accordance with the above; that appellee be awarded the sum of $697.80 heretofore tendered by appellant into the registry of the court; that appellee have judgment against Lonzo Stracner for the full principal amount of said note, interest and attorney's fees, as therein provided; that, in all other re-

spects, a take-nothing judgment be rendered against appellee as to appellant James Titus. All costs of this appeal are taxed against appellee.

As reversed in part and reformed in part, the judgment of the trial court is affirmed.